```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY
                              CAMDEN VICINAGE
```

| | |
|---|---|
| IN RE: MANLEY TOYS LIMITED,<br><br>    Debtor in a Foreign<br>    Proceeding.<br><br>---------------------------<br><br>ASI, INC.,<br><br>    Appellant,<br><br>        v.<br><br>FOREIGN LIQUIDATORS, et al.,<br><br>    Appellees. | Civ. Nos. 18-2836, 18-2838 (RMB)<br><br>**OPINION** |

APPEARANCES:

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
By: Richard B. Honig, Esq.
    Matthew E. Moloshok, Esq.
One Gateway Center
Newark, New Jersey 07102

    and

WEISBROD MATTEIS & COPLEY PLLC
By: Stephen A. Weisbrod, Esq.
1200 New Hampshire Avenue NW
Suite 600
Washington, DC 20036
        *Counsel for Appellant*

ARCHER & GREINER PC
By: Stephen M. Packman, Esq.
    Douglas G. Leney, Esq.
One Centennial Square
Haddonfield, New Jersey 08033

    and

GOODWIN PROCTOR LLP
By: Daniel M. Glosband, Esq.
100 Northern Avenue
Boston, Massachusetts 02210
        *Counsel for Appellees*

**BUMB**, UNITED STATES DISTRICT JUDGE:

On March 22, 2016, Manley Toys Limited ("the Debtor") commenced a creditors' voluntary liquidation in Hong Kong, pursuant to Hong Kong law. Mat Ng and John Robert Lees were appointed as liquidators ("the Liquidators"), and on the same day, the Liquidators filed a Chapter 15 case and motion in the United States Bankruptcy Court for the District of New Jersey. ASI, Inc., f/k/a Aviva Sports Inc. ("Aviva"), a judgment creditor of the Debtor, opposed the motion.[1] After a three-day evidentiary hearing, the Bankruptcy Court granted the motion, and recognized the Hong Kong liquidation of the Debtor as a "foreign main proceeding," 11 U.S.C. § 1502(4). Aviva appeals from that decision. For the reasons stated herein, the Court will affirm the Bankruptcy Court's well-reasoned and comprehensive recognition decision.

---

[1] Toys "R" Us, Inc., a former customer of the Debtor, also opposed the motion, however, only Aviva appeals.

## I. FACTUAL BACKGROUND

The Court recites the facts as found by the Bankruptcy Court in its decision.[2] In March of 2016, the Debtor was in significant financial and legal distress. Faced with "alleged declining sales," an over $8.58 million judgment entered against it in favor of Aviva in Minnesota Federal District Court, Aviva's ongoing efforts to collect on that judgment, and an upcoming jury trial in litigation with Toys "R" Us in this District, the Debtor decided "to enter into voluntary liquidation in Hong Kong." In re: Manley Toys Ltd., 580 B.R. 632, 635 (Bankr. D.N.J. 2018).

On March 11, 2016, notice of the "Creditors Meeting" to be held 11 days later (March 22nd) in Hong Kong-- the meeting that begins the liquidation process under Hong Kong law-- "was sent by regular mail to all of the Debtor's known creditors [(including Aviva)], and notice was published in three Hong Kong newspapers." Manley Toys, 580 B.R. at 636. Importantly, notice was not sent by email or fax, id., although-- as the Bankruptcy Court found, and Aviva does not contest on appeal-- Hong Kong law does not require such notice. Id. The Bankruptcy Court further found, and Aviva does not contest on appeal, that Hong Kong law also does not require the notice period-- i.e., the period of time between when the notice is sent and when the meeting is held-- to

---

[2] In its brief, Aviva states that it "accept[s] the facts the Bankruptcy Court found as true." (Dkt 18-2836, Entry 29, p. 18)

3

be of any particular length.  Id. at 640-41.  In short, there is no record evidence that there were any procedural irregularities under Hong Kong law with regard to the notice of the Creditors Meeting.

At the Creditors Meeting on March 22, 2016, liquidation of the Debtor was formally initiated in Hong Kong by the appointment of a "Committee of Inspection" ("COI").  Manley Toys, 580 B.R. at 636.  The COI appointed the Liquidators and authorized the Liquidators to commence the Chapter 15 case, which the Liquidators did that same day.  Id.

Aviva argued before the Bankruptcy Court, and continues to argue on appeal, that the Debtor and its former principals "initiated the Hong Kong liquidation and the Chapter 15 case in bad faith," as "part of the principals' long-running scheme to defy and undermine the U.S. judicial system."  (Dkt 18-2836, p. 6, 12)  In support of its argument, Aviva points to the following actions and events that occurred, or allegedly occurred, in the time leading up to March 22, 2016.

First, in late February 2016, two Manley affiliates, Toy Quest Ltd. and Manley Fashion Direct Ltd., paid approximately HK $125 million to Hang Seng Bank and HSBC to pay off two loans made to the Debtor.  (Aviva Exs. 118, 121, 164-65)  The result of these transactions was to substitute Debtor affiliates (Toy Quest and Manley Fashion) for independent creditors (Hang Seng Bank and

HSBC), which, in turn, nudged the percentage of the Debtor's total liabilities owed to Debtor-related companies past 50%, vesting control of the entire creditor group in Debtor affiliates. According to Aviva, this was a premeditated scheme to ensure control over the anticipated liquidation, and consequently, Aviva's marginalization from that process.[3]

Second, Aviva believes the short notice given for the Creditors Meeting, and the decision not to email or fax notice to creditors, demonstrates that the Debtor and its principals desired to exclude Aviva from the meeting. However, as the Bankruptcy Court found, "the Liquidators and the COI have offered to place Aviva on the COI to cure any perceived prejudice related to lack of notice, but Aviva has refused." Manley Toys, 580 B.R. at 641.

Third, Aviva asserts that "by the time the Principals [of the Debtor] formally put the company in liquidation, it had been stripped of nearly all of its assets." (Dkt 18-2836, Entry 19, p. 86) According to Aviva, "[a]t most, the Liquidators have less than US $13,000 available to them in Hong Kong," which "could not possibly be enough to pay for" the litigation of claims "for the

---

[3] The Liquidators admit that these transactions occurred, and that they resulted in the substitution of Debtor affiliates for independent bank creditors. The Liquidators maintain that such transactions are "the norm and not nefarious or indicative of bad faith." (Dkt 18-2836, Entry 28, p. 15)

5

actual benefit of [] independent creditors" like Aviva. (Id. at 86-87) While the Liquidators have received funding from Toy Quest, Aviva suggests that a potential conflict of interest exists insofar as Toy Quest itself allegedly has "a highly suspect creditor claim and, in addition, is an obvious potential target of fraudulent transfer and alter ego litigation" (Dkt 18-2836, Entry 29, p. 13) in connection with Aviva's attempts to collect on its judgment against the Debtor.

## II. LEGAL STANDARD

This Court has jurisdiction to hear appeals from the Bankruptcy Court's final orders pursuant to 28 U.S.C. § 158(a). The Bankruptcy Court's legal determinations are reviewed *de novo*; its factual findings are reviewed for clear error. In re: Titus, -- F.3d -- , 2019 WL 693026 at *3 (3d Cir. Feb. 20, 2019).

## III. ANALYSIS

On appeal, Aviva contests only three issues with regard to recognition: (A) that the Hong Kong proceeding is "collective" in nature, as required by 11 U.S.C. § 101(23); (B) that the proceeding is a "main" (as opposed to "nonmain") proceeding because the Debtor's "center of main interests" ("COMI"), 11 U.S.C. § 1502(4), is in Hong Kong; and (C) that recognition of the Hong Kong proceeding is not "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

### A. Collective in nature

Among other requirements, a foreign liquidation must be "collective in nature" to be recognized under Chapter 15. In re: ABC Learning Centres Ltd., 728 F.3d 301, 308 (3d Cir. 2013) (citing § 101(23)). A proceeding is collective if it considers the rights and obligations of all creditors. In re: ABC Learning Centres Ltd., 445 B.R. 318, 328 (Bankr. D. Del. 2010), aff'd, 728 F.3d 301 (3d Cir. 2013).[4] The collective proceeding requirement reflects U.S. policy "to provide an orderly liquidation procedure under which all creditors are treated equally." ABC Learning Centres, 728 F.3d at 310 (internal citation and quotation omitted).

Focusing on the nature of liquidation proceedings in general under Hong Kong law (as opposed to the particular manner in which the liquidation of this specific Debtor has proceeded), the Bankruptcy Court held:

> [t]he Hong Kong liquidation is collective in nature. Mr. Ong testified that the Liquidators' duty under Hong Kong law is to all creditors, whether those creditors are from Hong Kong or another country, including the United States. See May 13 Transcript at 157:18–158:4. Moreover, there are requirements for the collection and

---

[4] See also, In re: ENNIA Caribe Holding N.V., 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018) ("When determining whether a proceeding is 'collective in nature,' the primary question is whether the proceeding considers the rights and obligations of all creditors.") (citing ABC Learning Centres and Collier on Bankruptcy); In re: Irish Bank Resolution Corp. Ltd., 538 B.R. 692, 698 (D. Del. 2015) ("A collective proceeding is one that considers the rights and obligations of all creditors.") (internal citation omitted).

7

> distribution of funds as well as a priority scheme and
> a requirement that similarly situated creditors be
> treated equally. See May 13 Transcript at 157:3-6; Ong
> Declaration ¶¶ 27-30.

Manley Toys, 580 B.R. at 640.

Ignoring this portion of the decision altogether, Aviva argues that "the Court erred in finding that [the Debtor's] particular Hong Kong liquidation proceedings were collective in nature." (Dkt 18-2836, Entry 19, p. 77) According to Aviva, "[r]egardless of how Hong Kong liquidations are supposed to work, the way in which [the Debtor's] liquidation began and unfolded shows that it is not, in fact, collective, and never will be." (Id.)

This Court questions whether this is the correct legal inquiry. Indeed, the Liquidators argue it is not. According to the Liquidators, "the focus and subject matter of Chapter 15 [recognition] is on the foreign proceeding and not on the debtor." (Dkt 18-2836, Entry 28, p. 7) The Court need not decide the issue, however, because even if the Court may properly consider the factual specifics of this particular foreign liquidation proceeding, this proceeding is, as the Bankruptcy Court found[5], sufficiently collective in nature.

---

[5] The Bankruptcy Court appears also to have been somewhat skeptical of Aviva's particular proceeding argument, writing, "[a]lthough the Third Circuit did not include [whether the particular proceeding is collective] as a requirement to satisfy the collective in nature element, see ABC Learning Ctrs., 728

8

In support of its argument that the Hong Kong liquidation of the Debtor is not collective, Aviva relies on the manner in which notice of the Creditors Meeting was given, the February 2016 Toy Quest loan payoffs / alleged manipulation of the creditor list, and the funding (and / or alleged lack of funding) of the Liquidators. Aviva asserts that these factors, in combination, support the conclusion that the Debtor's Hong Kong liquidation is basically rigged and cannot possibly protect the interests of independent creditors like Aviva, and therefore is not collective in nature.

The Bankruptcy Court's specific findings of fact, however, undermine any conclusion that Aviva or other independent creditors are effectively shut-out of the liquidation process in Hong Kong. After carefully considering all of the evidence, the Bankruptcy Court found that: (a) Aviva could have been placed on the COI; (b) the Liquidators-- who are "not insiders"-- credibly testified that they "are in control of the liquidation" and "would bring appropriate suits against [Debtor] affiliates and officers if [an] investigation led [] to [the] conclu[sion] that such suits were appropriate"[6]; and (c) Mr. Ng, one of the two

---

F.3d at 310, the Court nevertheless finds that the Liquidators have met this burden as well." Manley Toys, 580 B.R. at 640.

[6] Aviva alleges that in the two years after the petition date, the Liquidators have not in fact investigated potential transfers, alter ego claims and other causes of action. Aviva claims that the Bankruptcy Court "deci[ded] to ignore the record"

9

Liquidators, credibly testified that "he believes he has sufficient money on hand to fund [] investigation[s] [of claims against Toy Quest or other affiliated companies], and if necessary would ask Aviva or [Toys "R" Us] to provide funds to allow the Liquidators to complete their investigation and to bring claims against insiders." Manley Toys, 580 B.R. at 642.

At its core, Aviva's argument seems to be that the Debtor and its affiliates, including Toy Quest, are controlling how the Hong Kong liquidation proceeds. This argument is not supported by the facts. The Bankruptcy Court found that, as a matter of Hong Kong law, the Liquidators-- not the Debtor, nor insiders of the Debtor-- control the liquidation and have legal responsibilities to all creditors. The Bankruptcy Court further found as fact that these particular Liquidators would act independently from the Debtor and its affiliates. The Bankruptcy Court found Mr. Ng credible; it specifically stated "Mr. Ng was [] quite believable when he testified that he would have no problem pursuing Toy Quest if there was a claim with merit, even

---

in this regard. (Dkt 18-2836, Entry 19, p. 84) Aviva, however, points to no exhibit, testimony, declaration or affidavit, nor other evidence in the record, that the Bankruptcy Court failed to consider. To the extent that Aviva asserts that circumstances have changed since the Bankruptcy Court's decision, Chapter 15 provides a mechanism for addressing subsequent developments. See 11 U.S.C.A. § 1517(d) ("The provisions of this subchapter do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist.").

though Toy Quest is a funding creditor." Manley Toys, 580 B.R. at 647. Accordingly, this Court holds that the Bankruptcy Court correctly held that the Liquidators had satisfied their burden of proving that the proceeding was collective in nature.

**B. COMI**

A foreign proceeding is a "foreign main proceeding" if the "proceeding [is] pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). "In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C.A. § 1516(c). It is undisputed that the Debtor's registered office is in Hong Kong.

After considering an additional four factors--(1) the location of the Debtor's headquarters; (2) the location of the Debtor's primary assets; (3) the location of the majority of the debtor's creditors; and (4) the jurisdiction whose law would apply to most disputes, Manley Toys, 580 B.R. at 645 (which factors Aviva does not argue the Bankruptcy Court erred in considering)-- the Bankruptcy Court held that most of the factors collectively weighed in favor of a finding that Hong Kong was, indeed, the Debtor's COMI.

On appeal, Aviva acknowledges that "the facts surrounding the COMI analysis were undisputed [at the evidentiary hearing]," nonetheless, Aviva asserts that the Bankruptcy Court erred as a

11

matter of law.  According to Aviva, the Bankruptcy Court erred by: (a) "considering" evidence of the Debtor's pre-petition presence in Hong Kong, "such as where [the Debtor's] accounting and marketing departments were housed when [the Debtor] was still in business" (Dkt 18-2836, Entry 19, p. 90); and (b) failing to give sufficient weight to the US $5 million Toys "R" Us receivable which is located in the United States, and the Debtor's independent creditors who are also located in the United States.  Aviva asserts that if the Bankruptcy Court had properly considered the receivable and the independent creditors, it would have held that the Debtor's COMI was the United States.

As to the first issue, Aviva takes a snippet of the Bankruptcy Court's lengthy and thorough COMI analysis and presents it out of context.  As the Court's opinion demonstrates, the Liquidators presented many pieces of evidence weighing in favor of Hong Kong being the location of the Debtor's headquarters:

> *The Debtor's headquarters is in Hong Kong.* See May 12 Transcript at 29:15–17; Ng Declaration ¶ 5. Mr. Ng testified that he reached that conclusion by reviewing the Debtor's filing records and other documents, such as the Debtor's annual return which states that the Debtor is a Hong Kong business. See May 12 Transcript at 29:18–20, 32:2–10. *The majority of the Debtor's business decisions and records were in Hong Kong as well as the Debtor's financial operations, such as accounting and marketing.* See id. at 33:24–34:12. See also Supplemental Ng Declaration ¶ 7 (198 employees in Hong Kong; bank accounts in Hong Kong).  Mr. Ng further testified that purchase orders, contracts, invoices, and other documents all state that the Debtor is located in Hong

12

> Kong. See id. at 37:2-39:21 (discussing Ex. L-22).
> Exhibit L-22 is a four-page exhibit of documents sent to
> a customer (Village Road Show) including a confirmation,
> purchase order and invoice. Each of the documents lists
> the Debtor's address as being in Hong Kong. Finally,
> the vast majority of the Debtor's employees were located
> in Hong Kong. See id. at 34:13-25 (discussing Ex. L-20).
> Exhibit L-20 is a list of 198 of Debtor's employees,
> which is the exact amount of employees mentioned in the
> Supplemental Ng Declaration. Therefore, the Court
> concludes that *the first factor* falls in favor of
> determining that the Debtor's COMI is in Hong Kong.

Manley Toys, 580 B.R. at 645-46 (emphasis added). Assuming *arguendo* that the Bankruptcy Court should not have considered pre-petition evidence such as the location of the Debtor's accounting and marketing departments[7], there is still more than sufficient evidence to support the Bankruptcy Court's factual finding that the Debtor's headquarters was in Hong Kong.

As to the second issue, Aviva's argument suffers from a similar deficiency. The location of the Toys "R" Us receivable and the location of independent creditors are but two pieces of evidence the Bankruptcy Court considered, among many other pieces of evidence, supporting its factual findings concerning the location of *all* of the Debtor's assets, and *all* of the Debtor's creditors-- which findings, in combination with the Bankruptcy Court's other findings as to the Debtor's headquarters, and the

---

[7] It is unclear whether Aviva is making a relevance objection, and if so, whether such objection was raised at the evidentiary hearing. The Court need not resolve this ambiguity.

13

applicable law, ultimately supported the Bankruptcy Court's conclusion as to the Debtor's COMI.

The Bankruptcy Court correctly considered not only the Toys "R" Us receivable, but also the other "primary assets" of the Debtor, which the Bankruptcy Court found to be bank accounts in Hong Kong, and "potential claims against insiders [of the Debtor]" in Hong Kong. Manley Toys, 580 B.R. at 646–47. That Aviva would weigh the relative strength of this evidence in a manner different from the Bankruptcy Court does not amount to reversible error. There is no dispute, as Aviva emphasizes, and the Bankruptcy Court found, that the Toys "R" Us receivable is approximately US $5 million, and the cash in the Hong Kong bank accounts was only approximately US $90,000. But Aviva's argument in this regard ignores the Bankruptcy Court's finding that there were other litigation claims located in Hong Kong. Id. at 647. Moreover, the Bankruptcy Court carefully explained why it gave more relative weight to the bank accounts as compared to the Toys "R" Us receivable: the Hong Kong bank accounts amounted to "hard / realizable (i.e., cash)" whereas the "the actual value of [the Toys "R" Us receivable] in terms of 'real' dollars is not certain." Id. at 647. The Bankruptcy Court's weighing of this evidence is logical and not clearly erroneous.

Lastly, as to the location of creditors, the Bankruptcy Court ruled in Aviva's favor, finding that more creditors were

14

located in the United States than Hong Kong.  Manley Toys, 580
B.R. at 647.  However, this factor is but one of four factors the
Bankruptcy Court considered, and the other three factors, the
Court found, weighed in favor of Hong Kong.  Thus, after
meticulously weighing all of the evidence, and considering all of
the factors, the Court correctly held that "the Liquidators have
met their burden of proof that the Debtor's COMI is Hong Kong."
Id. at 645.

### C. Manifestly against U.S. public policy

A court can refuse to recognize a foreign proceeding under
Chapter 15 if doing so "would be manifestly contrary to the
public policy of the United States."  11 U.S.C. § 1506.  This
exception is "narrowly construed because the word 'manifestly' in
international usage restricts the public policy exception to the
most fundamental policies of the United States."  ABC Learning
Centres, 728 F.3d at 309 (internal citation and quotation
omitted).  "The public policy exception applies [(1)] where the
procedural fairness of foreign proceedings is in doubt or cannot
be cured by the adoption of additional protections or [(2)] where
recognition would impinge severely on a U.S. constitutional or
statutory right."  Id.  (internal citation and quotation
omitted).  Aviva makes one procedural fairness argument and one
constitutional or statutory right argument.

15

Relying extensively on In re: Toft, which declined to recognize a foreign proceeding on public policy grounds, Aviva's first argument is based on its late notice of the Hong Kong Creditors' Meeting. 453 B.R. 186 (Bankr. S.D.N.Y. 2011). However, the Liquidators persuasively argue that Toft is distinguishable. Indeed, this Court views Toft as quite different from the instant case.

The expressly stated "purpose" of the Chapter 15 proceeding at issue in Toft was only to obtain-- *ex parte*, in "secret," and without the debtor's knowledge[8]--"access to [the debtor's] email accounts stored on [U.S.] servers." 453 B.R. at 188. The lack of notice that was so concerning to the bankruptcy court in Toft had a secretive, almost clandestine, aspect that is absent from this case. Moreover, as the bankruptcy court stated in Toth, "the relief sought by the Foreign Representative," which was an *ex parte* order compelling the disclosure of all past *and future* emails of the individual debtor, "is banned under U.S. law, and it would seemingly result in criminal liability under the Wiretap Act and the Privacy Act for those who carried it out." 453 B.R. at 198. The relief sought in this case is not remotely analogous.

---

[8] Toft involved a petition by a foreign administrator to recognize a German insolvency proceeding where the debtor was an individual, not a corporation. 453 B.R. at 188.

16

The late notice of the Creditors Meeting alone is insufficient to support a conclusion that the Hong Kong liquidation is so procedurally unfair that recognizing it would offend due process. First, as the Bankruptcy Court found, the Liquidators offered to place Aviva on the COI, thereby remedying any prejudice that may have resulted from the late notice. Second, there is a procedure in place where a Hong Kong court could invalidate the liquidation if procedural requirements are not satisfied.

Aviva also argues that recognizing the foreign proceeding will "improperly reward" the Debtor for allegedly "deliberately disobeying" U.S. court orders and ignoring the District of Minnesota judgment, thereby "encourag[ing]" other foreign companies to act similarly. (Dkt 18-2836, Entry 19, p. 98, 105) The Court declines Aviva's invitation to deny Chapter 15 recognition as a means of indirectly punishing the Debtor for alleged affronts to United States courts that are not this Court. Specifically, Aviva asserts that the Court should deny recognition as a means of "preserv[ing] the Minnesota Federal Court's jurisdiction over, and ability to enforce orders against [the Debtor]." (Id., p. 100) According to Aviva, one of the "primary motivations in initiating the Hong Kong liquidation was to avoid the imposition of sanctions in the Minnesota Federal

Action." (Id.) But even if Aviva is correct[9], it does not follow that recognition may be denied on public policy grounds.

Aviva attempts to draw parallels between this case and In re: Gold & Honey Ltd., 410 B.R. 357 (E.D.N.Y. 2009), which the Third Circuit cited in ABC Learning Centres as an example of a proceeding that was manifestly contrary to public policy. 728 F.3d at 310. But the Third Circuit's discussion of Gold & Honey illustrates how it is different from this case:

> [a]n Israeli insolvency proceeding was found to be manifestly contrary to public policy in In re: Gold & Honey, Ltd., because the receivership initiated in Israel after Chapter 11 proceeding began in the U.S. seized the debtor's assets, violating the bankruptcy court's stay order. 410 B.R. 357, 371-72 (Bankr. E.D.N.Y.2009). This conduct hindered two fundamental policy objectives of the automatic stay: "preventing one creditor from obtaining an advantage over other creditors, and providing for the efficient and orderly distribution of a debtor's assets to all creditors in accordance with their relative priorities." Id. at 372 (discussing "serious ramifications" if future creditors followed suit and seized assets under a United States court's jurisdiction in violation of its orders).

ABC Learning Centres, 728 F.3d at 309. Thus, recognizing the foreign proceeding in Gold & Honey would have resulted in a violation of U.S statute-- namely, the automatic stay statute, 11

---

[9] As the Bankruptcy Court observed, such decision "may [as Aviva asserts] have been the latest step in an effort to avoid a day of reckoning in the United States," Manley Toys, 580 B.R. at 649; the record evidence shows that the Debtor at least "had not complied with many orders of the Minnesota Court." Id. at 635.

18

U.S.C. § 362.  In contrast, Aviva does not assert that any U.S. statute has been, or will be, violated in this case.[10]

Both Toft and Gold & Honey illustrate the exceptional circumstances under which Chapter 15 recognition will be held to be manifestly contrary to U.S. public policy.  This case does not meet the high standard as articulated by the Third Circuit in ABC Learning Centres.  Accordingly, this Court holds that the Bankruptcy Court correctly held that the public policy exception to Chapter 15 recognition does not apply.

For all of the above-stated reasons, the Court will affirm the Bankruptcy Court's Chapter 15 recognition decision in its entirety.[11]

---

[10]  Moreover, while the Court need not, and does not, reach the issue in this case, the Third Circuit's discussion of Gold & Honey appears to suggest that not any violation of U.S. statute will suffice to support the public policy exception, rather it may be that such statute must embody fundamental policy objectives, as the automatic stay statute does, and as the Wiretap Act and the Privacy Act do.

[11]  In the recognition decision, the Bankruptcy Court also denied Aviva's request to dismiss or suspended the case pursuant to 11 U.S.C. § 305.  In five sentences of its 124-page opening brief, Aviva appears to argue that the Bankruptcy Court should have found that "the Hong Kong liquidation process is providing no benefit to creditors."  (Dkt 18-2836, Entry 19, p. 107)  Aviva does not flesh-out its argument in this regard; it does not articulate how the Bankruptcy Court allegedly clearly erred in its factual findings that: (1) the Liquidators would investigate and pursue viable claims on behalf of U.S. creditors; and (2) dismissing or suspending the case "would be potentially harmful to creditors in the United States that have not taken an active role in this case."  Manley Toys, 580 B.R. at 651.  Moreover, Aviva appears to have abandoned this argument, as it is not addressed in Aviva's reply brief.  Accordingly, the Bankruptcy

**IV. CONCLUSION**

For the foregoing reasons, the Court will affirm the Bankruptcy Court's Chapter 15 recognition decision and order. An appropriate Order shall issue on this date.

Dated: March 12, 2019                    　s/ Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE

---

Court's decision declining to dismiss or suspend the Chapter 15 case will be affirmed.